**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-18-00080-CV**
_____

**TRANSDESIGN INTERNATIONAL, LLC, AMADO LIZARRAGA AND CLAUS SUTOR, Appellants**

**V.**

**SAE TOWERS, LTD., Appellee**

**&**
_____

**NO. 09-18-00081-CV**
_____

**FALCON STEEL AMERICA, LLC, Appellant**

**V.**

**SAE TOWERS, LTD., Appellee**

---

**On Appeal from the 284th District Court
Montgomery County, Texas
Trial Cause No. 17-09-10566-CV**

---

**MEMORANDUM OPINION**

This matter involves two interlocutory appeals from rulings in the same underlying suit. *See* Tex. Civ. Prac. Rem. Code Ann. § 51.014(a)(12) (West Supp. 2018). In appellate cause number 09-18-00080-CV, TransDesign International, LLC (TransDesign International), Amado Lizarraga, Claus Sutor (collectively TransDesign) challenge the trial court's denial of their motion to dismiss the claims filed against them by SAE Towers, Ltd. (SAE or Appellee), under the Texas Citizens Participation Act (the TCPA). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001-.011 (West 2015).[1] In appellate cause number 09-18-00081-CV, Falcon Steel America, LLC (Falcon Steel) challenges the trial court's denial of its motion to dismiss SAE's claims pursuant to the TCPA. *See id*.

TransDesign and Falcon Steel were sued in the same underlying suit by SAE. SAE contends that the defendants misappropriated trade secrets and illegally used SAE's software to produce drawings and designs. In addition to seeking a temporary and permanent injunction, SAE sued Falcon Steel and TransDesign (collectively the

---

[1] The TCPA was recently amended effective September 1, 2019, and the amended version "applies only to an action filed on or after the effective date of this Act." *See* Act of May 17, 2019, 86th Leg., R.S., H.B. 2730, §§ 11, 12 (to be codified as an amendment to Tex. Civ. Prac. & Rem. Code ch. 27).

2

Defendants)[2] for statutory and common law misappropriation of trade secrets and conspiracy to misappropriate, and SAE alleged more than $40,000,000 in damages. We conclude in appellate cause number 09-18-00080-CV that the commercial speech exemption to the TCPA applies to SAE's claims against TransDesign, and we affirm the trial court's order denying TransDesign's motion to dismiss. We also conclude in appellate cause number 09-18-00081-CV that the commercial speech exemption applies, and we affirm the trial court's order denying Falcon Steel's motion to dismiss.

Background

According to its Fourth Amended Application for Temporary Injunction to Maintain Status Quo, Permanent Injunction, and Petition for Damages (the petition),[3] SAE designs, engineers, fabricates, and installs components and systems

---

[2] SAE also named José Salomón Rodriguez (a former draftsman at SAE's predecessor, ABB Mexico, who allegedly also worked for SAE but now operates his own company) as a defendant, but he is not a party to this appeal. For purposes of this appeal we need not discuss the allegations against Rodriguez.

[3] SAE filed a Second Amended Application for Temporary Injunction to Maintain Status Quo, Permanent Injunction, and Petition for Damages, and TransDesign and Falcon Steel filed motions to dismiss pursuant to the TCPA. SAE then filed a third amended and fourth amended petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.006(a) (West 2015); Tex. R. Civ. P. 65 (explaining that generally a substituted instrument takes place of original). At a later hearing set for the motions to dismiss, TransDesign and Falcon Steel objected to SAE's "untimely" response to their TCPA motions because the response was filed the night before the hearing. The

3

for lattice towers and tubular steel poles used for high and ultra-high voltage transmission of electric power. Between 2002 and 2005, a team at ABB Mexico (ABB) and another company developed a group of applications integrated into the AutoCAD program that "allows for the automatization of multiple functions usually required to effectively complete the detailed engineering for electric power transmission towers[]" ("the Software"). SAE alleges that it acquired exclusive rights to the Software in 2007 when it acquired a division of a company that included ABB and that since the Software was developed, the owners have tried to protect its secrecy.

---

trial court noted that the TCPA did not prohibit the trial court from considering a late-filed pleading, and the trial court granted TransDesign and Falcon Steel's motion for continuance of the hearing to file a reply to SAE's response to the motions to dismiss, reset the hearing for January 19, 2018, stated that it would not allow filings in support of or in response to the motions to dismiss after January 12, 2018, and clarified with SAE that there would be "no more amended pleadings[]" prior to the January 19th hearing. On appeal, Falcon Steel suggests that SAE's second amended petition is the petition that should be considered the live petition because SAE's subsequently-filed amended petitions were amended to circumvent the TCPA's strict requirements, which, according to Falcon Steel, the TCPA "does not allow[.]" Falcon Steel did not make this argument in the trial court nor does it cite authority for this argument on appeal. TransDesign and Falcon Steel argue on appeal that their motions to dismiss under the TCPA survive SAE's earlier nonsuiting of claims for business disparagement against the Defendants, but because we find that the commercial speech exemption applies to the lawsuit and affirm the orders denying the TCPA motions to dismiss, we need not address this argument.

According to SAE, use of the Software is valuable in that (1) when drawings are generated using the Software with AutoCAD, a bill of materials (including member profile type, size, material grade with corresponding weight) and items needed for construction can be added to the erection drawings; (2) shop drawings can be generated that show each member with its individual piece mark identification (or Piece Mark ID), which uniquely identifies every piece in the structure, listing size, thickness, material grade, length, weight, drawing reference, tower identification, and comments; (3) the fabricator or erector can click on the Piece Mark ID for a specific member and see the specifications and requirements for that member for easier shop fabrication and field erection; (4) digital drawings generated by the Software include alphanumeric data and information which can be input into Computer Numerical Controlled machines for the automated fabrication of each of the members/components of the lattice towers and tubular steel poles; and (5) quality control is enhanced by the Software because it assists with controlling inventory of the members and the status and progress of a project. SAE asserts that trade secret know-how has been incorporated over the years into the Software, this know-how is based on SAE's consistently changing needs in the industry in which it does business, and that the Software saves SAE considerable time and reduces error by 40 to 50 percent. SAE contends that the Software is "proprietary and

5

confidential software containing Trade Secrets which gave ABB Mexico, and, now gives SAE Towers, an economic and trade advantage against the competitors of ABB Mexico, and, now SAE Towers."

In the petition, SAE alleges that Defendant Amado Lizarraga is a former employee and design engineer for SAE who left and went to work for SAE's competitor and ultimately went into business as a principal or part owner of TransDesign International. SAE alleges Defendant Claus Sutor is a former sales manager for ABB and a former Executive Vice President of SAE. According to SAE, Sutor formed TransDesign International, a small engineering company specializing in the design and engineering of steel lattice transmission towers, when he was still employed by SAE, and Sutor later left TransDesign International and became an Executive Vice President at Falcon Steel.

In the petition, SAE alleges that the Defendants improperly acquired and knowingly used the Software without SAE's consent and used the software to produce digital drawings, and misappropriated and used the drawings to bid against SAE on projects or for products sold to SAE's competitors, causing losses to SAE. In addition to seeking a temporary and permanent injunction against the Defendants, SAE alleged claims against the Defendants for statutory and common law

6

misappropriation of trade secrets and conspiracy to misappropriate, and SAE seeks more than $40,000,000 in damages.

## The Motions to Dismiss Under the TCPA

In their motions to dismiss and at the trial court's hearing on the motions, the Defendants argued that the TCPA applies, that the commercial speech exemption to the TCPA does not apply, and that SAE has failed to present prima facie evidence of each element of its claims. In its written response to the motions to dismiss and at the hearing, SAE argued that its claims do not concern TCPA-protected "communications" and that, if they do, those communications are subject to the commercial speech exemption under the TCPA. SAE also argued that it presented prima facie evidence of each essential element of its claims.

The trial court signed orders denying the TCPA motions to dismiss. The trial judge did not explain the basis for her ruling in the orders, nor did she sign findings of fact and conclusions of law, and none were requested from the parties.

## Issues on Appeal

In cause number 09-18-00080-CV, TransDesign raises two points in support of their contention that the trial court erred in denying their TCPA motion to dismiss. First, they argue the TCPA applies to SAE's claims. Second, they contend SAE has not established clear and specific evidence of a prima facie case for each essential

7

element of SAE's claims against TransDesign. They also argue that the commercial speech exemption does not apply. In cause number 09-18-00081-CV, Falcon Steel raises the same arguments in support of its contention that the trial court erred in denying Falcon Steel's motion to dismiss. For convenience, we will address the issues in both appeals together.

Dismissal Under the TCPA

The TCPA is a statutory mechanism that permits a defendant to move for dismissal of a "legal action" that is "based on, relates to, or is in response to a party's exercise of the right of free speech, right to petition, or right of association[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a). Its purpose "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." *Id.* § 27.002. "To effectuate the statute's purpose, the Legislature has provided a two-step procedure to expedite the dismissal of claims brought to intimidate or to silence a defendant's exercise of these First Amendment rights." *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017); *see* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.003, 27.005. The two-step procedure

provides a burden-shifting framework. *In re Lipsky*, 460 S.W.3d 579, 586-87 (Tex. 2015).

Under the first step, the movant of a TCPA motion to dismiss has the burden to "show[] by a preponderance of the evidence that the [nonmovant's] legal action is based on, relates to, or is in response to the [movant's] exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). The statute defines the terms "exercise of the right of free speech," "exercise of the right to petition," and "exercise of the right of association." *Id.* § 27.001. The TCPA directs that it is to be "construed liberally to effectuate its purpose and intent fully." *Id.* § 27.011(b).

Assuming the movant meets its burden under step one to show the TCPA applies, then under step two the burden shifts to the nonmovant to establish "by clear and specific evidence a prima facie case for each essential element of the claim in question." *Id.* § 27.005(c). A "prima facie case" refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *In re Lipsky*, 460 S.W.3d at 590. It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (citing *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). Clear

9

and specific evidence means that the "plaintiff must provide enough detail to show the factual basis for its claim." *Id.* at 591.[4]

In determining whether to grant a TCPA motion to dismiss, the trial court "shall consider the pleadings and supporting and opposing affidavits stating the facts on which the liability or defense is based." *Id.* § 27.006(a). The court may allow specified and limited discovery relevant to the motion on a showing of good cause. *Id.* § 27.006(b). All other discovery in the legal action is suspended until the court has ruled on the motion to dismiss. *Id.* §§ 27.003(c), 27.006(b). The TCPA provides that if the trial court grants a TCPA motion to dismiss, it "shall" award the moving party

> (1) court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require; and
> (2) sanctions against the party who brought the legal action as the court determines sufficient to deter the party who brought the legal action from bringing similar actions described in this chapter.

*Id.* § 27.009(a).

---

[4] If the plaintiff satisfies the second step, the court should still dismiss the action if the defendant "establishes by a preponderance of the evidence each essential element of a valid defense to the nonmovant's claim." Tex. Civ. Prac. & Rem. Code Ann. § 27.005(d) (West 2015).

In reviewing a trial court's ruling on a motion to dismiss under the TCPA, we apply a de novo standard of review. *Johnson-Todd v. Morgan*, 480 S.W.3d 605, 609 (Tex. App.—Beaumont 2015, pet. denied) (citing *Ship v. Malouf*, 439 S.W.3d 432, 437 (Tex. App.—Dallas 2014, pet. denied); *Rehak Creative Servs., Inc. v. Witt*, 404 S.W.3d 716, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. denied)).

<u>Initial Burden of TransDesign and Falcon Steel</u>

Applying a de novo standard of review, we first examine whether TransDesign and Falcon Steel satisfied their initial burden of demonstrating that SAE's legal action is "based on, relates to, or is in response to" TransDesign and Falcon Steel's respective "exercise of (1) the right of free speech; (2) the right to petition; or (3) the right of association." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). It is undisputed that SAE's lawsuit against the Defendants is a "legal action," a term that the TCPA defines to include "a lawsuit, cause of action, petition . . . or any other judicial pleading or filing that requests legal or equitable relief." *See id.* § 27.001(6). TransDesign and Falcon Steel argued in their respective motions to dismiss and at the hearing that SAE's claims against them are based on or relate to their exercise of the right of free speech and of freedom of association. They both contend that SAE's claims are predicated factually on "communications" relating to

11

either the "exercise of the right of association" or the "exercise of the right of free speech."

The TCPA defines "exercise of the right of free speech" as "a communication made in connection with a matter of public concern." *Id.* § 27.001(3). The phrase "'[m]atter of public concern' includes an issue related to . . . a good, product, or service in the marketplace." *Id.* § 27.001(7)(E). The "exercise of the right of association" is defined as "a communication between individuals who join together to collectively express, promote, pursue, or defend common interests." *Id.* § 27.001(2). A "communication" is defined as "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." *Id.* § 27.001(1). As recognized by the Texas Supreme Court, the plain language of this definition extends the application of the TCPA to "[a]lmost every imaginable form of communication, in any medium[.]" *Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 894 (Tex. 2018).

TransDesign alleged

The TCPA applies here because SAE's claims relate to: (i) communications between and among Amado Lizarraga, Claus Sutor, and employees and/or vendors of TransDesign [International] concerning steel lattice tower engineering, design, and drafting services that TransDesign [International] provides; and/or (ii) communications between and among Amado Lizarraga, Claus Sutor, and employees and/or vendors of TransDesign [International] who have joined together to collectively express, promote, pursue, and defend common

12

interests in providing steel lattice tower engineering, design, and drafting services.

Falcon Steel asserted

> The TCPA has been interpreted so the "communication" to which it applies is not limited solely to constitutionally protected speech. Rather, the TCPA may also apply to commercial speech and association in commerce. Further, the intra-TransDesign communication to which Falcon Steel is allegedly privy through Claus Sutor, relates to a matter of public concern, which includes an issue related to a good, product or service in the marketplace pursuant to § 27.001(7)(E) of the Texas Civil Practice & Remedies Code.

Here, the parties disagree on whether SAE's claims are predicated factually on a "communication." TransDesign and Falcon Steel cite *Elite Auto Body LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191 (Tex. App.—Austin 2017, pet. dism'd), in support of their argument that SAE's claims implicate "communications" within the TCPA. On the other hand, SAE argues that its suit against the Defendants and the claims and allegations "do not concern TCPA-protected 'communications,' but rather *use* of the Software by Appellants and others—each sitting solitarily at a computer—that does not entail 'the making or submitting of a statement or document,' as required by TCPA section 27.001(1)." SAE contends that its claims do not turn on "communications" between Appellants or other defendants, and that "each of said parties had access to, had the opportunity to misappropriate, and is now using, the Software without any necessary 'communication' between them to

13

achieve that end." SAE also contends that software cannot be a "communication" as defined by the TCPA because software is not a "statement or document," and it is merely a tool through which information can be communicated.

In *Autocraft*, the Austin Court of Appeals described its ruling as an "illustrat[ion]" of the expansive scope of the TCPA as written by the legislature, and the Austin Court states that the TCPA "can potentially be invoked successfully to defend against claims seeking to remedy alleged misappropriation or misuse of a business's trade secrets or confidential information." 520 S.W.3d at 193. The *Autocraft* facts involved an employer-plaintiff who claimed some of its former body shop employees allegedly shared confidential and trade secret information with their new employer, a competing body shop, and allegations that the information was used by the new employer "'to obtain an unfair competitive advantage in the marketplace'" and "'to convince more employees to leave'" and join the competitor's business. *Id.* at 194. Relying on the plain language of the TCPA, the Austin Court of Appeals rejected Autocraft's (the employer-plaintiff) arguments that the TCPA was limited to publicly made "communications" protected by the First Amendment. *Id.* at 199, 204. Autocraft's complaints as alleged in the pleadings pertained, in part, to "'communications' among appellants within the [Elite Auto (competitor new employer and a Defendant)] enterprise through which they have

14

allegedly shared or used the Autocraft information in question," as well as communications by Elite Auto "to current Autocraft employees aimed at luring them to [Elite Auto]." *Id.* at 205. The Austin Court concluded the communications fell within the scope of the TCPA because the communications were made "in furtherance of the [Elite Auto] business enterprise relative to Autocraft's competitive position[]" and were an "exercise of the right of association[.]" *Id.* at 205. Notably, the appellant waived any argument regarding the commercial speech exemption. *Id.* at 206 n.75.

TransDesign argues that SAE's trade secret claims are like the claims in *Autocraft* that the Austin Court of Appeals determined implicated "communications" under the TCPA. TransDesign notes that the Austin Court of Appeals determined that the facts in *Autocraft* "satisf[ied] the remaining elements of the 'exercise of the right of association' definition[.]" *See id.* at 205. TransDesign argues that the trade secret and conspiracy claims (which are based on acts of misappropriating the trade secrets) not only satisfy the elements of "exercise of the right of association" but also the "exercise of the right of free speech." Falcon Steel makes similar arguments. SAE contends that the "communications" and facts in *Autocraft* are distinguishable from the facts here because the trade secret information "communicated" by the defendants in *Autocraft* included "in-and-of-itself valuable

15

information readily 'communicable' from one person to another[,]" as opposed to here, where software was shared and the defendants did not communicate actual information.

Before we determine whether the facts implicate a communication under the TCPA, we must examine SAE's allegations in its petition. The Supreme Court of Texas has recognized that "the unique language of the TCPA directs courts to decide its applicability based on a holistic review of the pleadings." *Adams*, 547 S.W.3d at 897. "When it is clear from the plaintiff's pleadings that the action is covered by the [TCPA], the defendant need show no more." *Hersh v. Tatum*, 526 S.W.3d 462, 467 (Tex. 2017). In SAE's "factual background" portion of its petition, SAE asserted

> TransDesign [International] Used the [] Software Without Consent of
> SAE Towers to Produce Drawings on the West Texas Project
>
> [] In October, 2014, SAE Towers was awarded a tower manufacturing project for a transmission line in west Texas. SAE Towers is not able to state the name of the project or the utility company because of a confidentiality agreement that is in place, but plans to try to produce the name of the project and the utility company when a protective order is in place in the law suit. SAE Towers had also bid on the engineering portion of the west Texas project, but was not successful. TransDesign [International] was the successful bidder on the engineering portion, and Salomón was hired to do the detailed drawings. When the detail[ed] drawings came in for SAE Towers to do the manufacturing portion of the project, SAE Towers recognized that TransDesign [International] produced the drawings on the west Texas project using the [] Software without consent of SAE Towers. The drawings named Salomón as the drafter of record, and Amado Lizarraga as the engineer of record who[] approved the drawings. When SAE Towers talked to Salomón,

16

Salomón was told not to use the [] Software again on any other project except for projects for SAE Towers. Salomón agreed. SAE Towers is not aware of any job since the west Texas project on which Salomón has used the [] Software. Since June, 2017, SAE Towers has become aware of several jobs since the west Texas project on which TransDesign [International] has used the [] Software without consent of SAE Towers.

### Falcon Steel Also Had Access to and Used Digital and Printed Drawings Without Consent of SAE Towers to Bid on the West Texas Project

[] Falcon Steel also had access to the drawings generated by the [] Software by TransDesign [International], and misappropriated and used the drawings to bid against SAE Towers on the West Texas Project on the manufacturing portion of the project. Claus Sutor is soliciting business for TransDesign [International] and Falcon Steel, whether these defendants win or lo[]se the bid. Neither José Salomón Rodriguez, Amado Lizarraga, Claus Sutor, TransDesign [International], nor Falcon Steel had consent to use the [] Software or the digital or printed drawings generated by the [] Software, and they knew they did not have consent to use the software or drawings.

In pleading its statutory misappropriation of trade secrets cause of action

against the Defendants, SAE alleged

Defendants misappropriated the trade secrets of the [] Software by unlawfully, and without consent acquiring the [] Software, using the [] Software to prepare shop and fabrication drawings, list of materials, and specifications for the members and components of the lattice towers for the Defendants and third parties who all were competitors of SAE[.]

In pleading its common law misappropriation of trade secrets cause of action

in the petition, SAE alleged

17

Defendants violated the duty of confidentiality by unlawfully, and without consent acquiring the [] Software, using the [] Software to prepare shop and fabrication drawings, list of materials, and specifications for the members and components of the lattice towers.

As to its conspiracy cause of action, SAE alleged that "Defendants were part of a conspiracy of misappropriation of trade secrets[,]" and that "[e]ach of the above acts of conspiracy, unless restrained by the temporary orders of this Court, will cause immediate and irreparable substantial damage to SAE[.]" In asserting that Falcon Steel is liable for the acts of Sutor as an agent and employee of Falcon Steel and liable for the acts of Lizarraga, Torres, and TransDesign as co-conspirators and joint venturers, SAE alleged

Claus Sutor in the West Texas project, and in the June 2017[] and September 2017 projects [] in which David Torres prepared detailed drawings for TransDesign [International] using the [] Software, Claus Sutor, as Executive Vice Pres[id]ent, Engineering & Marketing of Falcon Steel, employee and agent of Falcon Steel knew and was aware that José Salomón on the West Texas Project, and David Torres on the two later projects, used the [] Software without the permission of SAE[.] Claus Sutor and Amado Lizarraga controlled the manner, method, and details of the work done by David Torres to produce the detail drawings using the [] Software.

In *Autocraft*, the *use* or sharing of the alleged confidential and trade secret information constituted a "communication" within the meaning of the TCPA definition. *See Autocraft*, 520 S.W.3d at 205. Similarly, SAE's facts and claims as pleaded relate to the drawings generated from the use of the Software and the harm

18

that SAE allegedly suffered is alleged to be because of the use of the Software to generate the drawings without SAE's consent. SAE concedes on appeal that its claims are based on the wrongful use of the Software:

> . . . [T]here is no question that while SAE's claims are based on [TransDesign's and Falcon Steel's] wrongful use of the Software, because the Drawings emanate from the use of the Software—an event SAE objects to and seeks to enjoin—SAE's claims are likewise based on the Drawings, a fact evident from SAE's own pleadings.

We conclude that the alleged misappropriation of trade secrets by use of the Software and generation of the drawings (as well as the same acts in furtherance of the alleged conspiracy), like the use of the confidential trade secret information in *Autocraft*, constitutes "the making or submitting of a statement or document in any form or medium[.]" *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(1). Using the broad definition of "communication" as defined by the legislature, and applying the expansive scope as interpreted by the Texas Supreme Court, we conclude that the use of the Software to generate the objectionable drawings and the acts in furtherance of the alleged conspiracy fall within the TCPA's definition of "communications" and "free speech" made in connection with a good, product, or service in the marketplace. *See id.*; *Adams*, 547 S.W.3d at 894.[5] For these reasons, we find that

---

[5] SAE has not argued that the drawings were not made in connection with a good, product, or service in the marketplace.

19

TransDesign and Falcon Steel met their burden of showing by a preponderance of the evidence that the legal action is "based on, relates to, or is in response to" the parties' exercise of the right of free speech.[6] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 27.001(3), 27.001(7)(E), 27.005. To the extent that TransDesign and Falcon Steel argue that they met their initial burden to establish that the TCPA applies to the claims SAE asserts against them, we sustain the first point. That said, SAE also contends that "the TCPA is inapplicable because such 'communications' are commercial speech, which is exempt pursuant to TCPA section 27.010(b) (the 'Commercial Speech Exemption')."

Commercial Speech Exemption

Having determined that TransDesign and Falcon Steel met their initial burden under the TCPA, we would ordinarily examine whether SAE met its burden to show a prima facie case on its claims. We need not make such examination if we determine that the trial court properly denied the motions to dismiss because SAE's claims

---

[6] Because we have found TransDesign and Falcon Steel have met their initial burden to demonstrate the communication applies to the "exercise of the right of free speech," we need not decide whether the communication also involved the "exercise of the right of association." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *see also Elite Auto LLC v. Autocraft Bodywerks, Inc.*, 520 S.W.3d 191, 205 (Tex. App.— Austin 2017, pet. dism'd) (citing Tex. R. App. P. 47.1) (conclusion that Autocraft's claims constituted "communication" and appellants met their burden in reliance on their "exercise of the right of association" eliminated the need to address appellants' alternative ground in reliance on "exercise of the right of free speech").

would fall under the TCPA's "commercial speech" exemption. *See Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018) (noting that if TCPA exemption applies, movant cannot invoke TCPA's protections).

Section 27.010 of the TCPA provides some exemptions. *Id.* § 27.010. If an action falls under one of the codified exemptions, the TCPA does not apply and may not be used to dismiss the action. *See id.*; *Best*, 562 S.W.3d at 11. Under the commercial speech exemption, for example, the TCPA

> does not apply to a legal action brought against a person primarily engaged in the business of selling or leasing goods or services, if the statement or conduct arises out of the sale or lease of goods, services, or an insurance product, insurance services, or a commercial transaction in which the intended audience is an actual or potential buyer or customer.

Tex. Civ. Prac. & Rem. Code Ann. § 27.010(b). The Texas Supreme Court recently explained that the commercial speech exemption applies when

> (1) the defendant was primarily engaged in the business of selling or leasing goods, (2) the defendant made the statement or engaged in the conduct on which the claim is based in the defendant's capacity as a seller or lessor of those goods or services, (3) the statement or conduct at issue arose out of a commercial transaction involving the kind of goods or services the defendant provides, and (4) the intended audience of the statement or conduct were actual or potential customers of the defendant for the kind of goods or services the defendant provides.

*Castleman v. Internet Money Ltd.*, 546 S.W.3d 684, 688 (Tex. 2018). "[T]he only reasonable construction of the exemption's reference to 'the statement or conduct'

21

is as a reference back to 'the defendant's' statement or conduct 'on which the claim is based.'" *Id.* The non-movant bears the burden of proving a statutory exemption from application of the TCPA. *See Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App—Houston [14th Dist.] 2015, no pet.); *Tervita, LLC v. Sutterfield*, 482 S.W.3d 280, 282 (Tex. App.—Dallas 2015, pet. denied). We apply the *Castleman* criteria to each defendant's statement or conduct on which the claims are based.[7] 546 S.W.3d at 688.

Here, the statement or conduct on which the misappropriation and conspiracy claims are based is the unauthorized use of the Software to generate drawings for TransDesign's and Falcon Steel's customers. TransDesign and Falcon Steel do not deny that they are engaged in the business of selling or leasing goods or services.

---

[7] To the extent TransDesign and Falcon Steel argue that SAE had the burden to demonstrate as to each cause of action that the *Castleman* criteria had been met, we note that the wording in the statute says it applies to the "legal action" brought by the plaintiff and the Legislature's definition of "legal action" includes "a lawsuit, cause of action, petition . . . or any other judicial pleading or filing that requests legal or equitable relief." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(6) (West 2015). SAE must demonstrate that the exemption applies to the *lawsuit* it brought against each defendant, that each is primarily engaged in the business of selling or leasing goods or services, and the statement or conduct arises out of the sale or lease of goods or services, or a commercial transaction with the intended audience who is an actual or potential buyer or customer. *Id.* § 27.010(b) (West 2015). Even if SAE was required to show the exemption applied to every cause of action, we note that the causes of action pleaded by SAE in the petition all involve the same underlying statement or conduct (the use of the Software that generated the drawings).

22

In their motion to dismiss, TransDesign asserts that TransDesign International "specializ[es] in engineering and design of large, steel lattice towers[,]" provides services to major power utilities and tower fabrication companies, and creates drawings for transmission tower fabrication companies to use in a bid package and to create complete tower design, fabrication, and erection drawings for use in the project. Affidavits of Sutor and Lizarraga were attached to TransDesign's motion to dismiss in support of these assertions. As for the second requirement under *Castleman*, the affidavits of Sutor and Lizarraga also establish that the drawings generated by TransDesign through the alleged use of the Software were goods and services sold by TransDesign. As to the third *Castleman* element, the drawings generated by TransDesign's alleged use of the Software arise out of commercial transactions involving the kind of goods or services TransDesign provide to its customers. As to the fourth requirement, the affidavit of Claus Sutor states that TransDesign provides services to two principal categories of customers: (1) major power utility companies that engage TransDesign for tower design and detailing/preparation of erection and fabrication drawings for the transmission towers; and (2) tower fabrication companies that are in the business of manufacturing all the parts to assemble a transmission tower in the field. These major utility companies and tower fabrication companies are TransDesign's

23

customers and intended audience of the drawings. Therefore, TransDesign's complained of "statements or conduct" satisfies the *Castleman* criteria and falls within the commercial speech exemption.

Next, we apply the *Castleman* criteria to Falcon Steel. Falcon Steel does not dispute that it is primarily engaged in the business of selling or leasing goods or services. As to the second *Castleman* requirement, Falcon Steel used the drawings generated by the Software to bid on projects and in performance of its contracts with its clients to provide design and drafting services. Falcon Steel attached to its motion to dismiss an affidavit from a corporate representative that alleged that Falcon Steel obtains lattice tower component design drawings and related drawings from TransDesign to bid on projects, and sometimes projects in which SAE has also submitted bids. SAE also pleaded in the petition that Falcon Steel used the drawings generated by the Software in bidding on projects with actual or potential clients, and that when Falcon Steel received the drawings from TransDesign and others using the Software, TransDesign and Falcon Steel had an advantage over SAE in making bids to potential clients and in performance of contracts with its clients to provide design and drafting services. We conclude that SAE met its burden to establish that the allegations in the legal action filed by SAE against Falcon Steel meet the third

24

and fourth requirements of *Castleman*. We find Falcon Steel's alleged wrongful conduct also falls within the commercial speech exemption.

SAE has met its burden of proving that the commercial speech exemption applies to the legal action SAE filed against TransDesign and Falcon Steel. *See Deaver*, 483 S.W.3d at 673; *Sutterfield*, 482 S.W.3d at 282. We need not address TransDesign's and Falcon Steel's second point asserting that SAE failed to meet its burden under the TCPA of establishing by clear and specific evidence a prima facie case for each essential element of its claims against them. *See Best*, 562 S.W.3d at 11 (noting that if TCPA exemption applies, movant cannot invoke TCPA's protections); *see also* Tex. R. App. P. 47.1. We conclude that the trial court did not err in denying the TCPA motions to dismiss filed by TransDesign and Falcon Steel because the commercial speech exemption applies to the underlying claims.

We affirm the trial court's order denying TransDesign's motion to dismiss, and we affirm the trial court's order denying Falcon Steel's motion to dismiss.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on June 22, 2018
Opinion Delivered June 27, 2019

Before McKeithen, C.J., Kreger and Johnson, JJ.

25